[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11095
Non-Argument Calendar

_____

D.C. Docket No. 3:06-cr-00010-CAR-CHW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCUS PEREZ JACKSON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 26, 2015)

Before TJOFLAT, HULL and WILSON, Circuit Judges.

PER CURIAM:

Pursuant to 18 U.S.C. § 3583(e)(3), the district court revoked Marcus Jackson's supervised release for committing sexual battery and attempted rape against Christina Mitchell, with whom Jackson had a prior romantic relationship and had fathered twins. On appeal, Jackson argues that, at the revocation hearing, the district court plainly erred and infringed on his due process right to confrontation by limiting his cross-examination of Mitchell about her boyfriend at the time of the incident. After review, we affirm.[1]

## I.    BACKGROUND FACTS

At Jackson's revocation hearing, Mitchell testified that she ended her romantic relationship with Jackson six months after the September 2011 birth of their twins. Even after the relationship ended, however, Jackson sent Mitchell sexually explicit text messages. In the days leading up to the assault, Jackson sent several text messages making sexual advances, which Mitchell rejected. On the night of June 18, 2013, Jackson visited Mitchell's home to help with various tasks, but later attacked her when he made a sexual advance that she refused.

---

[1]We ordinarily review constitutional claims de novo, but we review only for plain error where, as here, the defendant failed to raise the pertinent constitutional objection in the district court. United States v. Nash, 438 F.3d 1302, 1304 (11th Cir. 2006). Under plain-error review, the defendant must first demonstrate that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). If those conditions are met, we may choose to exercise our discretion to correct the forfeited error only if the error seriously affects the fairness, integrity, or reputation of judicial proceedings. Id.

Jackson's defense was that his sexual contact with Mitchell was consensual. On cross-examination, Jackson's counsel asked Mitchell numerous questions about her actions both before and after the incident to try to show that she and Jackson were on more intimate terms than she claimed. For example, defense counsel elicited from Mitchell that she had asked Jackson over to cut their children's hair and install a new television, and that she also fixed dinner for him and allowed him to give the children a bath and put them to bed. Then, while Jackson watched a basketball game on television in the living room, Mitchell took a shower and went to bed. Jackson's counsel also got Mitchell to admit that she became upset with Jackson after she learned that Jackson had fathered another woman's child while they were living together, that she met with Jackson three months after the attack to tell him she did not hate him and also that she had reservations about testifying and was at the hearing pursuant to a subpoena.

Jackson's counsel also asked Mitchell about one of Jackson's text messages on her cell phone referring to another man in Mitchell's life. Mitchell explained that the person was her boyfriend at the time of the text message, but that the two did not date after the June 18, 2013 incident.

After the government objected to the relevance of this line of questioning, defense counsel explained that her questions were designed to elicit a motive to fabricate the rape story to hide Mitchell's consensual relations with Jackson from

3

her boyfriend.  The district court sustained the objection.  Defense counsel, however, was permitted to ask Mitchell about a person named Payton, who was listed on a government exhibit as someone who had called Mitchell's cell phone. Mitchell clarified that Payton was the name of her then-boyfriend and that she did not call him, or anyone, after Jackson attacked her.

At the conclusion of the hearing, the district court credited Mitchell's testimony and found that Jackson committed aggravated sexual assault and attempted rape, in violation of state law.  Accordingly, the district court revoked Jackson's supervised release and imposed a 46-month sentence.

## II.    DISCUSSION

A defendant in supervised release revocation proceedings is entitled to minimal due process protections, including the right to confront and cross-examine witnesses.  United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994); Fed. R. Crim. P. 32.1(b)(2)(C).  This Court has not addressed in a published opinion the extent to which a district court may limit cross-examination of a witness in a revocation hearing.  In the trial context, however, we have concluded that so long as a defendant is able to elicit sufficient information from which the factfinder can assess a witness's possible motive or bias, the right of confrontation is satisfied. United States v. Barrington, 648 F.3d 1178, 1188 (11th Cir. 2011).  The test is whether the factfinder "would have received a significantly different impression of

4

the witness' credibility had counsel pursued the proposed line of cross-examination." Id. (quotation marks omitted).

Here, Jackson cannot show that the district court committed error when it limited his cross-examination of Mitchell about her ex-boyfriend. Although Jackson was not allowed to question Mitchell as much as he would have liked, he was able to develop sufficient facts from which to argue that Mitchell was not credible. Specifically, Jackson was able to establish that: (1) Mitchell was upset with Jackson for fathering another woman's child; (2) she was in another relationship with someone named Payton before the attack, but remained friendly with Jackson; (3) she invited Jackson into her home, prepared him dinner, and allowed him to remain even after she and her children had gone to bed; (4) she did not call Payton after the attack and her relationship with Payton ended immediately after the incident; (5) three months after the incident, she told Jackson she did not hate him; and (6) she testified at the revocation hearing under subpoena.

In short, while Jackson's exploration of Mitchell's relationship with Payton was somewhat truncated, Jackson was given ample latitude to inquire into a variety of topics relating to Mitchell's credibility and possible motives to lie. See United States v. Pacchioli, 718 F.3d 1294, 1304-05 (11th Cir. 2013) (explaining that where a particular line of questioning is truncated, but the defendant otherwise is given "ample latitude to attack the witness's credibility," there is no denial of the

5

right of confrontation).  Under these circumstances, Jackson's due process right to confront Mitchell was satisfied.

In any event, even if Jackson could show error, he could not show that the error was plain.  Neither this Court nor the Supreme Court has squarely held that the kind of limitation of cross-examination imposed by the district court in Jackson's case is a due process violation.  See United States v. Dortch, 696 F.3d 1104, 1112 (11th Cir. 2012) (explaining that an error is not clear and obvious for plain error purposes unless there is controlling authority from the Supreme Court or this Court that squarely supports the defendant's argument).

Finally, even assuming there was plain error, Jackson cannot show that the decision to disallow further questioning about Mitchell's ex-boyfriend affected Jackson's substantial rights.  Even after Jackson's extensive cross-examination and various arguments as to why Mitchell should not be believed, the district court found Mitchell's testimony to be "very credible."  Jackson did not explain how further questioning about Mitchell's ex-boyfriend would have elicited testimony that would have led the district court to a different conclusion.

Further, the district court did not rely solely on Mitchell's hearing testimony to find Jackson committed the sexual assault.  The district court heard testimony from the investigating police officer, and considered Mitchell's recorded statement

6

given to the officer and photographs of the physical evidence the officer collected at the scene, including from Mitchell's cell phone.

The undisputed text messages between Mitchell and Jackson showed that Jackson repeatedly made sexual advances toward Mitchell and that Mitchell clearly and consistently rejected them.  The government's DNA evidence proved that a sexual encounter took place, and the district court found that the circumstances surrounding the incident supported Mitchell's testimony that it was without her consent.  Given the totality of the evidence before the district court, Jackson has not shown that the district court's limitation of his cross-examination of Mitchell affected the outcome of the revocation proceedings.  See United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005) (explaining that the prejudice prong of the plain error test requires the defendant to show a reasonable probability of a different outcome).

**AFFIRMED.**