[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12169
Non-Argument Calendar

_____

D.C. Docket No. 0:20-cr-60027-RKA-1,

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY EARL HAMILTON,

Defendant-Appellant.

_____

No. 20-12170
Non-Argument Calendar

_____

D.C. Docket Nos. 0:20-tp-60010-RKA,
0:20-cr-60027-RKA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFFREY EARL HAMILTON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 28, 2021)

Before JILL PRYOR, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Jeffrey Hamilton appeals his 24-month sentence for illegal reentry after removal and four-month sentence for violating his supervised release, sentences the district court ordered him to serve consecutively. He argues that his combined 28-month sentence is procedurally unreasonable because the district court plainly erred by concluding that his sentences had to be imposed consecutively. The government concedes the district court plainly erred but argues that Hamilton deserves no relief because he invited the error. After careful review, we vacate and remand for resentencing because we agree with the parties that the district court plainly erred and reject the government's argument that Hamilton invited the error.

2

## I.   BACKGROUND

Hamilton was apprehended by authorities after a vessel dropped him off in Pompano Beach, Florida.  After fingerprinting identified him as having previously been removed from the country, Hamilton was indicted for illegally reentering the United States, in violation of 8 U.S.C. § 1326(a), (b)(2).  Hamilton pled guilty, and the district court accepted his plea.

Hamilton's reentry into the United States also led the probation office to file a petition seeking the revocation of a supervised release term Hamilton was serving based on crimes for which he was sentenced 13 years earlier.  Hamilton agreed with the government that by illegally reentering the United States he violated the terms of his supervised release, and the district court revoked his supervised release.

The district court proceeded to sentence Hamilton for the illegal reentry charge and the supervised release violation.  We review the sentencing proceeding in some detail, as the details are dispositive of this appeal.  The court began by asking whether the parties objected to addressing the supervised release violation before the illegal reentry charge.  The government stated that it had no objection but interjected that the sentences would have to be imposed consecutively.  The court then turned to Hamilton to determine whether he objected to addressing the

3

supervised release violation first.  Hamilton's counsel stated that he had "[n]o objection whatsoever" to the district court's proposal.  Doc. 37 at 4.[1]

The district court then calculated that, under the United States Sentencing Guidelines, the advisory guidelines range was 24 to 30 months' imprisonment for the illegal reentry charge and four to 10 months for the supervised release violation.[2]  The court asked Hamilton's counsel if the guidelines range was "properly compute[d]" as to both offenses.  *Id.* at 18.  Hamilton's counsel replied that he had no objections to those computations.  The government recommended that Hamilton be sentenced to the "low end" of the guidelines for both offenses, that is, 24 months for the illegal reentry and four months for the supervised release violation.  The government then asked for the sentences to be imposed consecutively, twice arguing that the district court had no discretion to impose the sentences concurrently.  *See id.* at 4 (arguing the sentences "ha[d] to be consecutive"); *id.* at 19 (arguing that consecutive sentences were "required by the law").  Hamilton's counsel "thank[ed] the government for making that low-end recommendation."  *Id.* at 19.

The district court followed the government's recommendation, which it labeled the "joint" recommendation of the parties, sentencing Hamilton to 24

---

[1] Doc." numbers refer to the district court's docket entries.

[2] These calculations are not at issue on appeal.

months for the illegal reentry and four months for the supervised release violation, to be served consecutively, for a total of 28 months. *Id.* at 23. The court asked whether Hamilton "object[ed] to the Court's findings of fact or to the manner in which the sentence was pronounced" and whether the defense had "[a]nything else." *Id.* at 25. Hamilton's counsel had "[n]o objections" and nothing else to add. *Id.*

This is Hamilton's appeal.

## II.    STANDARD OF REVIEW

When a defendant argues for the first time on appeal that his sentence is procedurally unreasonable, we review for plain error. *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014). However, when a party "induce[d]" or "invite[d]" the district court's error, we will not upend the district court's ruling even if its error was plain. *United States v. Silvestri*, 409 F.3d 1311, 1327–28 (11th Cir. 2005) (internal quotation marks omitted). We assess in the first instance whether a party invited the district court's error. *See id.* at 1337.

## III.    ANALYSIS

This appeal turns on whether the invited error doctrine applies. The government concedes that the district court had discretion to impose Hamilton's sentences consecutively or concurrently and therefore the district court committed a "paradigmatic procedural error" by accepting the government's contention at the

sentencing hearing that the court was required by law to impose the sentences consecutively. *See* Appellee's Br. at 13–14 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). The government further concedes that this error was "plain" because it "affected Hamilton's substantial rights," *id.* at 14 (citing *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016)), and "could seriously affect the integrity or public reputation of judicial proceedings," *id.* at 15 (citing *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018)). We agree.

The only issue is whether Hamilton forfeited his right to be sentenced according to law because he invited the district court's error. We conclude that Hamilton did not invite the error; we therefore vacate and remand.

The invited error doctrine is the "cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (internal quotation marks omitted). The doctrine's rationale is the "common sense view that where a party invite[d] the trial court to commit error, he cannot later cry foul on appeal" because no litigant should "benefit from introducing error [in the district court] with the intention of creating grounds [for appeal]." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009) (internal quotation marks and citation omitted). The doctrine applies when a defendant "induce[d]" the district court's error, *id.*, or expressly agreed that the district court should make the

erroneous ruling, *United States v. Feldman*, 931 F.3d 1245, 1260 (11th Cir. 2019), but it does not apply when a defendant "fail[ed] to object [to the district court's error]," *United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012).  We generally give the defendant the benefit of the doubt before concluding that he invited the error and therefore has forfeited any recourse for the district court's plain error.  *See Dortch*, 696 F.3d at 1112 (holding that the doctrine did not apply when it was "ambiguous" whether the defendant expressly agreed to the arguably erroneous jury instruction); *Brannan*, 562 F.3d at 1307 (undertaking the invited error inquiry by "read[ing] [the record] in [the] light most favorable to the defendant").

The government argues that the invited error doctrine applies in this case "because Hamilton affirmatively agreed to and recommended [that his sentences had to be imposed consecutively]."  Appellee's Br. at 8.  To support its view, the government points to three instances in the record where Hamilton supposedly invited the error and then argues that, even if each of those instances taken alone does not suffice, their cumulative effect triggers the doctrine.  We address the three instances in the record that supposedly amount to invited error in turn.  Then we consider the government's cumulative invited error argument.

First, the government argues that, when the district court asked him whether it had "properly compute[d]" the guidelines range, Doc. 37 at 18, "Hamilton not

only failed to correct the district court's (and the government's) misunderstanding, he affirmatively supported [that misunderstanding]."[3] Appellee's Br. at 10. We cannot agree.

To review, the district court explained that Hamilton's guidelines range was 24 to 30 months for the illegal reentry and four to 10 months for the supervised release violation, for an accumulated guidelines range of 28 to 40 months. The district court then asked Hamilton's counsel whether it had "properly computed the guideline range *as to the supervised release violation*." Doc. 37 at 18 (emphasis added). Hamilton's counsel replied that it had. Next, the district court asked Hamilton's counsel whether it had "properly computed the guideline range *as to the substantive offense of illegal reentry*." *Id.* (emphasis added). Again, Hamilton's counsel replied that it had. Finally, the court asked whether Hamilton's counsel had any objection to "either guideline range," to which Hamilton's counsel responded no. *Id.* In this colloquy, Hamilton's counsel affirmatively agreed that the district court properly computed the guidelines ranges for the two sentences. But he did not affirmatively agree that the two sentences

---

[3] Although the government appears to recognize that a defendant's failure to object does not amount to invited error, its brief repeatedly blames Hamilton for not objecting to the government's and the district court's legal misunderstanding. As our law makes clear, though, Hamilton was not obligated to correct the district court's legal error to secure his right to review for plain error. *Dortch*, 696 F.3d at 1112. The plain error standard of review applies precisely because the defendant failed to object. More is required for invited error.

were required to be imposed consecutively rather than concurrently; that question was not asked.  Therefore, Hamilton's counsel did not invite the error in this exchange.  *See Dortch*, 696 F.3d at 1112; *Feldman*, 931 F.3d at 1260.

Second, the government points to a colloquy at the hearing's opening as showing invited error.  Again, we disagree.

To begin the hearing, the district court said, "Good afternoon . . . I propose we take up the supervised release violation hearing first.  *Any objection to that*?"  Doc. 37 at 4 (emphasis added).  The government responded:  "Judge, the only thing is, I believe that that violation has to be consecutive.  So, I guess you could order it before.  Either way, it doesn't matter."  *Id.*  The court replied, "[i]t doesn't matter."  *Id.*  The government then stated, "[o]kay.  *Then I have no problem with doing the violation—*," at which point the court interrupted and said, "Mr. Berube [Hamilton's counsel]?"  *Id.* (emphasis added).  Hamilton's counsel replied, *"[n]o problems, your Honor.  No objection whatsoever*."  *Id.* (emphasis added).

The government suggests that when Hamilton's counsel replied to the court's question, he was responding to the government's statement that the sentences had to be imposed consecutively.  This strikes us as quite a strained characterization of the exchange.  When Hamilton's counsel answered "[n]o objection," he was responding to the district court's question whether there was "[a]ny objection" to the court's proposal to "take up the supervised release

9

violation hearing first." *Id.* It is true that between the court's question and Hamilton's counsel's answer the government interjected with a tangential and, as it turns out, erroneous statement—that the sentences for the two offenses had to be imposed consecutively—before answering that the government had "no problem with doing the [supervised release] violation [first]." *Id.* But the government's interjection does not change the fact that when Hamilton's counsel stated he had no objection to the district court's proposal, he was responding directly to a question from the court that had nothing to do with whether the sentences had to be imposed consecutively. Hamilton's counsel invited no error here.

Third, the government argues that Hamilton invited the error when the government made its sentencing recommendation because Hamilton "adopted the government's recommendation for the imposition of consecutive sentences at the low end of Hamilton's advisory [g]uidelines range." Appellee's Br. at 10. Here, too, we are not persuaded.

In this portion of the transcript, the government "recommend[ed] the low end on both cases to be served consecutively, as is required by the law," to which the court replied, "[s]o 28 months." Doc. 37 at 19. After the government confirmed that it was seeking a 28-month sentence, the court turned to Hamilton's counsel, who stated, "Your Honor, we thank the government for making that low-end recommendation" and explained that Hamilton wanted to resolve the matter.

*Id.* The government argues that, by thanking the government, Hamilton's counsel was not only joining its 28-month recommendation but also expressly supporting the government's error that the district court was required to impose the sentences consecutively. Not so. Hamilton's counsel did not unambiguously support the government's recommended sentence, much less the notion that the district court was required to impose the sentences consecutively. Our precedent requires that the defendant's assent be unambiguous. *See Dortch*, 696 F.3d at 1112 (holding that the "ambiguous statement to the district court" that the defendant "[did not] think" he would "need to review the [arguably erroneous jury] instructions again with the district court at a later time" did not trigger the invited error doctrine).[4]

Lastly, the government argues that there was invited error under a "totality of the circumstances" approach. Appellee's Br. at 11. The government cites no authority, however, for its view that there exists such a thing as cumulative invited error or that we take a "totality of the circumstances" approach to the invited error inquiry. And we have found none. Our precedent is clear: invited error occurs only when the defendant introduces the error or affirmatively agrees to or supports

---

[4] The government also points to a comment the district court made, which reflects the court's perception that the government and defense were presenting a "joint" sentencing recommendation, as evidence that Hamilton invited the error. But our focus in the invited error analysis is on Hamilton's conduct, not the court's perception. And as we have explained, Hamilton's counsel neither induced nor supported the district court's legal error. And, in any event, the government has offered us no authority to support its suggestion that the district court's characterization of the facts and circumstances affects our invited error analysis.

the error in question.  *See, e.g.*, *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003) (holding that the defendant invited error by "affirmatively agreeing" to the playing of tapes at trial, which he later claimed was erroneous).[5] The government cannot stitch together instances that do not amount to invited error and arrive at invited error.[6]

For those reasons, Hamilton did not invite the error he complains of. Because we agree with both parties that the district court plainly erred by concluding it had no discretion to impose concurrent sentences, we vacate and remand for resentencing.

**VACATED and REMANDED.**

---

[5] This is not a case, as the government argues, "where the appellant 'effectively caused' the alleged error."  Appellee's Br. at 8.  In cases where a defendant effectively caused the error, unlike this case, the defendant affirmatively encouraged the district court to err.  *See Jernigan*, 341 F.3d at 1290; *see also United States v. Deleon*, 812 F. App'x 948, 950 (11th Cir. 2020) (unpublished) (using the "effectively caused" language but holding that invited error arose because the defendant "stipulat[ed]" to what he later argued was error).  If the "effectively caused" language were as broad as the government suggests, we would have invited error every time a defendant failed to object—a result that *Dortch* forecloses.  696 F.3d at 1112.

[6] The government cites two unpublished, and therefore nonbinding, cases as factually similar to this one and supposedly supporting its view that invited error occurred.  *See* Appellee's Br. at 8–9 (citing *United States v. Manning*, 800 F. App'x 868 (11th Cir. 2020) (unpublished), and *United States v. Williams*, 361 F. App'x 45 (11th Cir. 2020) (unpublished)).  These cases deal with the invited error doctrine in the context of consecutive-sentence errors like the one in this case.  But they do not strengthen the government's position.  In *Manning*, we concluded that there was invited error when the *defendant's counsel* twice told the district court that the guidelines "required [the sentences] to be consecutive."  800 F. App'x at 875 (internal quotation marks omitted).  And, in *Williams*, there was invited error because the defendant's attorney "agreed" with the court that it was required to impose consecutive sentences.  361 F. App'x at 47.  Hamilton's counsel's conduct was materially different from the conduct of the defendants' counsel in those cases.